UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY JOSEPH SANTOS, IV,<br><br>Petitioner,<br><br>v.<br><br>BRIAN CATES, Warden,<br><br>Respondent. | No. 1:25-cv-01576-KES-SKO (HC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS WITH PREJUDICE**<br><br>**[21-DAY OBJECTION DEADLINE]** |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner filed the instant petition in this Court on November 17, 2025. (Doc. 1.) On February 6, 2026, Respondent filed a response to the petition. (Doc. 11.) On March 9, 2026, Petitioner filed a traverse. (Doc. 12.)

As discussed below, the Court finds the petition to be without merit and will recommend it be **DENIED.**

**DISCUSSION**

I.      PROCEDURAL HISTORY

On October 11, 2022, a Merced County jury found Petitioner guilty of first-degree murder (Cal. Penal Code § 187(a)) and personal discharge of a firearm resulting in death (Cal. Penal Code § 12022.53(d)). (Doc. 1 at 42.) On June 2, 2023, Petitioner was sentenced to a term of 50 years to life. (Doc. 1 at 42.)

1

On June 8, 2023, Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). People v. Santos, No. F086396, 2025 WL 258809 (Cal. Ct. App. Jan. 21, 2025).  On January 21, 2025, the Fifth DCA affirmed the judgment. Id. Petitioner petitioned for rehearing which was denied on January 29, 2025. (Doc. 1 at 52.) Petitioner then petitioned for review in the California Supreme Court. (Doc. 1 at 8.)  On April 2, 2025, the California Supreme Court summarily denied review. (Doc. 1 at 2.)

II.    FACTUAL BACKGROUND[1]

On the morning of May 27, 2022, A.H. was walking with her friend Andrew May from the trailer park where she lived to get breakfast at a nearby restaurant. A.H. heard a gunshot and looked around to see what was happening. She saw a white car coming from the direction of the gunshot. The driver, Petitioner, pulled up beside A.H. and May. Petitioner pointed a "big gun" out his driver side window and shouted at them, asking if they "banged." May responded by asking Petitioner, "Who are you? Where you from?" Petitioner did not respond.

May then yelled at Petitioner, telling him to put the gun down so they could "go toe to toe." Petitioner was getting out of the vehicle, but it started rolling, so he got back in. May yelled at him again, "Put the gun down and let's go toe and toe." Petitioner then put the car in park, got out of the vehicle, and pointed the gun at May.

May began walking toward Petitioner. May was unarmed. Petitioner yelled at May, "telling him if he takes another step, he's going to shoot." They were about eight to 10 feet apart. Petitioner then fired multiple shots at May, killing him.

R.H. was driving his daughter to school. On the way, he stopped four or five car lengths behind a white car that was blocking the trailer park's exit. The victim was in the other lane, so he could not go around. The driver of the white car got out. Something about the victim made R.H. want to leave.

R.H. "kind of not looked," then looked again. He saw a gun pointed down. Then he "hit

---

[1] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1).  Therefore, the Court will rely on the Fifth DCA's summary of the facts in Santos, 2025 WL 255809, at *1-2.  See Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

reverse" and looked down. When he looked back up, the person with the gun was shooting at the victim. After the person with the gun shot the victim, he pointed it at R.H. R.H. sped away and did not look back.

III.    JURISDICTION

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Merced County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

IV.    LEGAL STANDARD OF REVIEW

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

Under Section 2254(d)(1), a state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result."  Brown v. Payton, 544 U.S. 133, 141

3

(2005) (citing Williams, 529 U.S. at 405-406).  This court looks to "Supreme Court holdings at the time of the state court's last reasoned decision" as "the source of clearly established Federal law for the purposes of AEDPA." Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005). A Supreme Court precedent is not clearly established law under section 2254(d)(1) unless the Court "squarely addresses the issue" in the case before the state court. Wright v. Van Patten, 552 U.S. 120, 125–26 (2008) (per curiam) (concluding that a state court had not unreasonably applied federal law to a claim of prejudice under Strickland where the logic of petitioner's argument would have required the extension of the Supreme Court's inherent prejudice doctrine to a new context); Carey v. Musladin, 549 U.S. 70, 76–77 (2006) (same). While "[c]ertain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt," Yarborough v. Alvarado, 541 U.S. 652, 666 (2004), "when a state court may draw a principled distinction between the case before it and Supreme Court caselaw, the law is not clearly established for the state-court case." Murdoch v. Castro, 609 F.3d 983, 991 (9th Cir. 2010). "'[I]f a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state court decision.'" White v. Woodall, 572 U.S. 415, 426 (2014) (quoting Yarborough, 541 U.S. at 666).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA.  The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011).  The petitioner "must show far more than that the state court's decision was 'merely wrong' or 'even clear error.'" Shinn v. Kayer, 592 U.S. 111, 118 (2020) (quoting Virginia v. LeBlanc, 582 U. S. 91, 93 (2017) (*per curiam*)).  Rather, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law *beyond any possibility of fairminded disagreement*." Richter, 562 U.S. at 103 (emphasis added); see also Kayer, 592 U.S. at 118.  In

4

other words, so long as fairminded jurists could disagree with each other as to whether the state court was correct, the state court decision is not unreasonable under AEDPA.  Congress "meant" this standard to be "difficult to meet."  Richter, 562 U.S. at 102.

Section 2254(d)(2) pertains to state court decisions based on factual findings.  Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997).  The federal habeas court must give "substantial deference" to the state court.  Brumfield v. Cain, 576 U.S. 305, 314 (2015). "Factual determinations by state courts are presumed correct" and the petitioner bears the burden of overcoming the presumption with "clear and convincing evidence to the contrary."  Miller-El, 537 U.S. at 340; 28 U.S.C. § 2254(e)(1). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists."  Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).  If "'[r]easonable minds reviewing the record might disagree' about the finding in question, '. . . that does not suffice'" to prove the lower court's factual determination was unreasonable. Wood v. Allen, 558 U.S. 290, 301 (2010) (alteration in original) (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision.  See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Andrews v. Davis, 994 F.3d 1042, 1107 (9th Cir. 2019) (en banc).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and

5

reviewed it for harmlessness).

V.      REVIEW OF CLAIM

Petitioner complains that the trial court erroneously failed to instruct the jury *sua sponte* on imperfect self-defense, a circumstance that negates malice and reduces a murder to voluntary manslaughter.  According to Petitioner, this error deprived him of his Fifth and Fourteenth Amendment rights. (Doc. 1 at 4-5.)

Due process requires that "criminal defendants be afforded a meaningful opportunity to present a complete defense." Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)). Therefore, a criminal defendant is entitled to adequate instructions on the defense theory of the case. See Matthews v. United States, 485 U.S. 58, 63 (1988) (stating that a defendant is entitled to "an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."); Bradley v. Duncan, 315 F.3d 1091, 1098–1099 (9th Cir. 2002) ("the state court's failure to correctly instruct the jury on the defense may deprive the defendant of his due process right to present a defense"), *cert. denied*, 540 U.S. 963 (2003). This is so because "the right to present a defense would be empty if it did not entail the further right to instruction that allowed the jury to consider the defense." Bradley, 315 F.3d at 1099. Nevertheless, the failure to instruct on a defense theory is error only if "the theory is legally sound and the evidence in the case makes [the theory] applicable." Clark, 450 F.3d at 904-905. Further, a defendant is not entitled to insist that jury instructions be worded in a particular manner; rather, it is sufficient if the instructions adequately embody the defense theory. United States v. Del Muro, 87 F.3d 1078, 1081 (9th Cir. 1996).

Finally, federal habeas corpus relief is warranted only where the error had a "substantial and injurious effect or influence in determining the jury's verdict." Hedgpeth v. Pulido, 555 U.S. 57, 58, 61–62 (2008) (*per curiam*) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

In rejecting the claim, the Fifth DCA explained:

***A. Applicable Law and Standard of Review***

"Murder is the unlawful killing of a human being ... with malice aforethought." (§ 187, subd. (a).) "All murder that is perpetrated by ... [a] willful, deliberate, and premeditated killing ... is murder of the first degree." (§ 189, subd. (a).)

6

"Voluntary '[m]anslaughter, a lesser included offense of murder, is an unlawful killing without malice .... Two factors may preclude the formation of malice and reduce murder to voluntary manslaughter: heat of passion and unreasonable self-defense.'" (*People v. Soto* (2018) 4 Cal.5th 968, 974.) "Under the doctrine of imperfect self-defense, when the trier of fact finds that a defendant killed another person because the defendant actually but unreasonably believed he was in imminent danger of death or great bodily injury, the defendant is deemed to have acted without malice and thus can be convicted of no crime greater than voluntary manslaughter." (*In re Christian S.* (1994) 7 Cal.4th 768, 771.)

"[I]mperfect self-defense is not an affirmative defense, but a description of one type of voluntary manslaughter. Thus the trial court must instruct on this doctrine, whether or not instructions are requested by counsel, whenever there is evidence substantial enough to merit consideration by the jury that under this doctrine the defendant is guilty of voluntary manslaughter." (*People v. Manriquez* (2005) 37 Cal.4th 547, 581.) "Substantial evidence is evidence from which a jury could conclude beyond a reasonable doubt that the lesser offense was committed. [Citations.] Speculative, minimal, or insubstantial evidence is insufficient to require an instruction on a lesser included offense." (*People v. Simon* (2016) 1 Cal. 5th 98, 132 (*Simon*).) "In deciding whether evidence is 'substantial' in this context, a court determines only its bare legal sufficiency, not its weight." (*People v. Moye* (2009) 47 Cal.4th 537, 556.)

"We review the trial court's failure to instruct on a lesser included offense de novo [citations,] considering the evidence in the light most favorable to the defendant [citations]." (*People v. Brothers* (2015) 236 Cal.App.4th 24, 30; see also *Simon, supra*, 1 Cal.5th at p. 133 ["We review de novo a trial court's decision not to give an imperfect self-defense instruction."].)

### B. Analysis

Santos argues that the trial court erred because it did not sua sponte instruct the jury on imperfect self-defense voluntary manslaughter. The People argue, among other things, that the court was not required to give the instruction because Santos initiated the altercation by pulling up to May and pointing a gun at him while shouting. We agree with the People.

"'The concepts of perfect and imperfect self-defense are not entirely separate, but are intertwined .... "[T]he ordinary self-defense doctrine—applicable when a defendant reasonably believes that his safety is endangered—may not be invoked by a defendant who, through his own wrongful conduct (e.g., the initiation of a physical attack or the commission of a felony), has created circumstances under which his adversary's attack or pursuit is legally justified. [Citations.] It follows, a fortiori, that the imperfect self-defense doctrine cannot be invoked in such circumstances."'" (*People v. Enraca* (2012) 53 Cal.4th 735, 761 (*Enraca*).)

For example, in *People v. Booker* (2011) 51 Cal.4th 141, the defendant stabbed victim 1 with a knife. (*Id*. at p. 183.) Victim 2 "responded by retrieving her handgun and threatening to shoot him. [The d]efendant then claimed he struck [victim 2] and took the gun from her. [Victim 3] ... charged him, and during the ensuing melee he stabbed both victims and eventually shot [victim 3]." (*Id*. at p. 181.) The defendant argued that the trial court erred by refusing to instruct the jury on imperfect self-defense as to the murders of victims 2 and 3. (*Id*. at 181–182.) Our Supreme Court held that, "[a]s [the] defendant initiated the attack on [victim 1] ..., and there was no evidence that [victim 2's] and [victim 3's] subsequent

7

actions were not legally justified, he may not claim imperfect self-defense." (Id. at p. 182.)

As another example, in *People v. Seaton* (2001) 26 Cal.4th 598, the defendant argued there was evidence to support an imperfect self-defense instruction, "point[ing] to his testimony that after he struck the victim with his fist, the victim wielded a hammer, which [the] defendant then wrested from the victim and used to attack the victim. He assert[ed] he attacked the victim with the hammer in an effort to protect himself." (*Id.* at p. 664.) Our Supreme Court held that, as the "defendant's testimony showed him to be the initial aggressor and the victim's response legally justified, [the] defendant could not rely on unreasonable self-defense as a ground for voluntary manslaughter." (*Ibid.*; see also *People v. Vasquez* (2006) 136 Cal.App.4th 1176, 1179 ["Imperfect self-defense does not apply if a defendant's conduct creates circumstances where the victim is legally justified in resorting to self-defense against the defendant."]; *Enraca, supra*, 53 Cal.4th at p. 761 ["if defendant had first assaulted [victim], then unreasonably believed [victim] was assaulting him, a claim of imperfect self-defense would be unavailable[.]"].)

Here, the evidence shows (and no one disputes) that the shooter (Santos) approached May, pointed his gun out his car's window, and shouted at May, asking May if he "banged." In response, May, who was unarmed, twice told Santos to put the gun down so they could "go toe to toe." He also walked toward Santos.

Santos does not argue that walking toward him or telling him to put his gun down so he and May could fight was an unlawful response to his actions, nor do we see how it could be given that Santos initiated the confrontation by pulling up to May, pointing his gun out the window, and shouting at May. While it is not clear that May was trying to deescalate the situation as argued by the People (May continued to walk toward Santos even after Santos warned him not to), there is nothing in the record suggesting that May, who had not yet used any force (let alone deadly force), acted unlawfully.

As there is no evidence in the record suggesting that May was the initial aggressor or that his response to Santos's actions was unlawful, the trial court was not required to instruct the jury on imperfect self-defense.

Santos, 2025 WL 258809, at *2-3.

The state court determined that imperfect self-defense does not apply in a case where the defendant initiated the altercation and the victim's response was not unlawful, and therefore, Petitioner was not entitled to an instruction on imperfect self-defense. This Court is bound by the state court's determination that there has been no violation of state law. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam) (noting that the Supreme Court has repeatedly held that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). "It is for the California courts to determine the scope of imperfect self-defense and the circumstances where malice

8

aforethought is deemed to be present or negated." Mariscal v. Terhune, 237 F. App'x 138, 140 (9th Cir. 2007). Because Petitioner was not entitled to the instruction under California law, the trial court's failure to give it did not deprive him of due process.

Petitioner also fails to demonstrate that he was constitutionally entitled to an imperfect self-defense instruction as part of a theory of the defense. As previously noted, a state court's jury instructions violate due process if they deny the criminal defendant "a meaningful opportunity to present a complete defense." Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006), cert. denied sub nom., Ayers v. Clark, 549 U.S. 1027, 127 S.Ct. 555, 166 L.Ed.2d 423 (2006) (quoting California v. Trombetta, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)). Here, however, there was no evidence to support a theory of imperfect self-defense. Rather, the evidence showed Petitioner was the aggressor and the victim posed no threat to him. Petitioner approached the victim and pointed a gun at him. The victim told Petitioner to put the gun down. The victim stepped toward Petitioner, but he was completely unarmed and made no threatening gestures, let alone use force. Under no circumstances could the victim's actions be considered unlawful. Petitioner cannot claim he was denied the opportunity to present a complete defense where there is no evidence to support the defense theory. Clark, 450 F.3d at 904-905.

Even assuming the trial court erred by failing to instruct the jury on imperfect self-defense, the error was clearly harmless. No evidence was presented that Petitioner killed the victim believing he needed to defend against imminent peril to life or bodily injury or that Petitioner thought that the victim was the aggressor.  The claim is plainly without merit.

VI.     RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED WITH PREJUDICE.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty-one (21) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document

should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:    **March 17, 2026**              /s/ *Sheila K. Oberto*
                                          UNITED STATES MAGISTRATE JUDGE

10